**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FAS TECHNOLOGIES, LLC,<br><br>                 Plaintiff,<br><br>      v.<br><br>HIRATA CORPORATION , et al.,<br><br>                Defendants. | Civ. Action No. 3:06-cv-02217 |

**MOTION BY DEFENDANT HIRATA CORPORATION
TO COMPEL ARBITRATION AND DISMISS COMPLAINT
AND BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. ii

I.     SUMMARY OF THE MOTION ............................................................................................... 1

II.    RELEVANT FACTS ................................................................................................................ 2

III.   ARGUMENT ........................................................................................................................ 4

        A.    The Federal Arbitration Act Requires Arbitration of This Dispute ..................................................................................................... 4

              1.    There Are At Least Four Arbitration Agreements Between FAS and Hirata ............................................................................ 6

              2.    The Arbitration Agreements Encompass Each of FAS's Claims Against Hirata ............................................................................... 7

              3.    That Some of FAS's Claims Sound in Tort Is Immaterial ............................................................................................. 7

        B.    Dismissal, Rather Than a Stay, Is Appropriate ........................................................ 9

IV.   CONCLUSION .................................................................................................................... 11

## TABLE OF AUTHORITIES

**CASES** **PAGE**

*Adevereaux v. Sports & Fitness Clubs of Am., Inc.*, No. 3-030CV-2824-L,
  2004 WL 414896 (N.D. Tex. Feb. 17, 2004) ...............................................................10

*Alford v. Dean Witter Reynolds, Inc*., 975 F.2d 1161 (5th Cir. 1992) ..........................................10

*AT&T Techs., Inc. v. Communication Workers of Am.*, 475 U.S. 643
  (1986) ....................................................................................................................................4

*Bloxom v. Landmark Publ'g Corp*., 184 F. Supp.2d 578 (E.D. Tex. 2002) ....................................10

*Buell Door Co. v. Architectural Sys., Inc*., No. 3:02-CV-721-AH, 2002
  WL 1968223 (N.D. Tex. Aug. 20, 2002) .................................................................................5

*Commerce Park at DFW Freeport v. Mardian Constr. Co*., 729 F.2d 334
  (5th Cir. 1984) ........................................................................................................................5

*Dancu v. Coopers & Lybrand*, 778 F. Supp. 832 (E.D. Pa. 1991), *aff'd*,
  972 F.2d 1330 (3d Cir. 1992) ...............................................................................................10

*Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985) ................................................................4

*FCI USA v. Tyco Elecs. Corp*., No. 2:06-CV-128, 2006 WL 2037557
  (E.D. Tex. July 18, 2006) .......................................................................................................8

*Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674 (5th Cir. 1999) ........................................................10

*Gray v. Sage Telecom, Inc*., 410 F. Supp. 2d 507 (N.D. Tex. 2006) ...............................................9

*Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000) ................................................................................7

*Hawk v. Spaghetti Warehouse Rests., Inc*., No. 3:03-CV-0399-H, 2003
  WL 21246138 (N.D. Tex. May 1, 2003) ............................................................................4, 5

*Hoffman v. Fidelity & Deposit Co. of Maryland*, 734 F. Supp. 192
  (D.N.J. 1990) ........................................................................................................................10

*Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp*., 981 F.2d 752
  (5th Cir. 1993) ........................................................................................................................5

*Life of Am. Ins. Co. v. Aetna Life Ins. Co*., 744 F.2d 409 (5th Cir. 1984) .......................................5

*Lim v. Offshore Specialty Fabricators, Inc*., 404 F.3d 898 (5th Cir.), *cert.
  denied*, 126 S. Ct. 365 (2005) ..............................................................................................10

*Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998) .....................................9

*Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633 (5th Cir. 1985)..........................5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614
 (1985)....................................................................................................................4

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ....................4

*Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d
 160 (5th Cir. 1998) ............................................................................................5, 6

*Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34 (5th Cir. 1990)......................................5, 8

*Osteomed, L.P. v. Koby Indus., L.P.*, No. 3:06-CV-1045-K, 2006 WL
 3392184 (N.D. Tex. Nov. 20, 2006)......................................................................9

*Pennzoil Exploration & Prod. Co. v. Ramco En-er-gy Ltd.*, 139 F.3d 1061
 (5th Cir. 1998) ................................................................................................5, 6, 7

*Personal Sec. & Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388 (5th Cir.
 2002) ......................................................................................................................4

*Prima Paint Corp., v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)..........................5

*Sea-Land Ser., Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750 (D.P.R.
 1986)....................................................................................................................10

*Sharju Ltd. P'ship v. Choice Hotels Int'l, Inc.*, No. 3:01-CV-2605-X, 2002
 WL 107171 (N.D. Tex. Jan. 22, 2002) ..................................................................9

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184
 (2007)....................................................................................................................1

*Sparling v. Hoffman Constr. Co.*, 864 F.2d 635 (9th Cir. 1988) ....................................10

*Tenet v. Doe*, 544 U.S. 1 (2005) ........................................................................................1

*Third Party Advantage Adm'rs, Inc., v. J.P. Farley Corp.*, No. 3:06-CV-
 0534-G, 2006 WL 3445216 (N.D. Tex. Nov. 27, 2006) ........................................8

*VDV Media Corp. v. Relm Wireless, Inc.*, No. 3:05-CV-1877-H, 2006 WL
 462436 (N.D. Tex. Feb. 27, 2006).........................................................................8

*Westport Petroleum, Inc. v. Stena Bulk, Ltd.*, No. H-05-4158, 2006 U.S.
 Dist. LEXIS 63159 (S.D. Tex. Sept. 5, 2006) .......................................................1

*Wick v. Atlantic Marine, Inc.*, 605 F.2d 166 (5th Cir. 1979) ............................................5

**STATUTES AND RULES**

9 U.S.C. § 2 ......................................................................................................................... 4

9 U.S.C. § 3 ......................................................................................................................... 9

9 U.S.C. § 4 ............................................................................................................. 1, 4, 7, 9

9 U.S.C. § 10 ..................................................................................................................... 10

Fed. R. Civ. P. 12(b)(1) ....................................................................................................... 1

Fed. R. Civ. P. 12(b)(2) ....................................................................................................... 1

Fed. R. Civ. P. 12(b)(3) ....................................................................................................... 1

Defendant Hirata Corporation ("Hirata") moves to compel arbitration of this controversy as required by 9 U.S.C. § 4, and to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(3).[1]

## I. SUMMARY OF THE MOTION

Beginning in 2001, Hirata and Plaintiff FAS Technologies, LLC ("FAS") entered into a series of business agreements concerning a certain technology. In order mutually to disarm themselves of the threat of expensive litigation in distant and unfamiliar territory, the parties included in those agreements arbitration clauses providing that any disputes related to the agreements were to be resolved by arbitration conducted in the city of the defendant's principal place of business — in Dallas, if FAS were the defendant; in Tokyo, if Hirata were the defendant. In 2004, Hirata elected not to renew its relationship with FAS. In response, FAS

---

[1] Contemporaneously with this motion, Hirata is filing a Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(2). Although Hirata was obliged to make that motion in order to avoid waiving its personal jurisdiction defense, Hirata respectfully suggests that judicial economy would best be served by adjudicating the instant motion to compel arbitration before considering personal jurisdiction. A recent Supreme Court case confirms that such ordering is well within the court's discretion. "[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1191 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). Thus, the Supreme Court in *Sinochem* approved dismissal of a case based on *forum non conveniens* before reaching personal and subject-matter jurisdiction. *Sinochem* recognized that judicial economy should drive a court's choice of threshold grounds: a court may preserve judicial resources by choosing the threshold path of least resistance, provided it not adjudicate the merits of the case. *Id.* at 1192-93; *see also Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005). Similarly, the Southern District of Texas has compelled arbitration before resolving jurisdiction, emphasizing that in so doing it was not trespassing on forbidden ground by deciding the merits of the case. *Westport Petroleum, Inc. v. Stena Bulk, Ltd.*, No. H-05-4158, 2006 U.S. Dist. LEXIS 63159, at *14-*16 (S.D. Tex. Sept. 5, 2006). The broad arbitration clauses at issue in the case present a straightforward and uncomplicated ground for compelling arbitration and dismissing the case (or, at the very least, staying it pending the outcome of arbitration in Japan). Addressing the arbitration issue first would not only avoid unnecessary adjudication of personal jurisdiction issues; it would also avoid the potential waste of resources that would occur if this Court ruled on jurisdiction without considering arbitrability, and then FAS re-filed its case in another district court, which would then have to revisit the entire action.

filed the present lawsuit seeking actual and punitive damages for various alleged bad acts in connection with the parties' business agreements. Hirata now seeks to enforce the arbitration provisions of those agreements.

## II. RELEVANT FACTS

Beginning in 2001, Hirata and FAS entered into a series of agreements to share, develop, and collaborate on spinless coating technology, which is used to manufacture flat panel displays to be incorporated into PC monitors or TVs. As outlined in FAS's First Amended Complaint ("Complaint" or "Compl.") (Docket No. 6, filed Dec. 14, 2006), the principal agreements were:

1. A Non-Disclosure Agreement ("NDA"), dated Apr. 1, 2001 (App.1-11). *See* Compl. ¶ 26.

2. A Business Venture Agreement ("BVA"), dated June 30, 2001 (App.12-24). *See* Compl. ¶ 33.

3. An Additional Non-Disclosure Agreement ("Additional NDA"), dated Oct. 30, 2001 (App.25-29). *See* Compl. ¶ 38.

4. A Definitive Business Venture Agreement ("DBVA"), dated Oct. 30, 2001 (App.30-41). *See* Compl. ¶ 39.

5. A Memorandum of Understanding ("MOU"), dated Jan. 21, 2004 (App.42-48). *See* Compl. ¶ 43.

These agreements are attached to the Appendix as Exhibits A, B, C, D, and E, respectively.[2]

Each of these agreements, except for the MOU, includes an express arbitration clause providing that "any dispute between the parties arising from the execution of or in connection with" the agreement must be resolved by arbitration. These arbitration clauses also require that the arbitration be held at the city of the defendant's principal office — Dallas for FAS, and To-

---

[2] The Complaint also references sign-in sheets (Compl. ¶ 24). Hirata does not concede that lobby sign-in sheets could create a binding agreement between Hirata and FAS, if they were signed at all. The Complaint also mentions a License and Component Supply Agreement and an amendment thereto (Compl. ¶¶ 40, 42) relating to the joint-development program established by the DBVA. This agreement was ancillary to the DBVA, which defined the relationship between the parties.

kyo for Hirata — and provide that each agreement shall be governed by and interpreted in accordance with the laws of Japan.  NDA ¶ 8 (App.4-5); BVA ¶ 16 (App.23); Additional NDA ¶¶ 7-8 (App.28)[3]; DBVA ¶ 15 (App.41).

The DBVA, which governed the parties' entire relationship, included an integration clause stating that it constituted "the entire agreement as to the subject matter among the parties hereof, and supersedes prior agreements, whether written or oral . . . ."  That "entire agreement" could be modified only on mutual written consent.  DBVA ¶ 14 (App.40).

The MOU was an ancillary agreement under the DBVA pursuant to which Hirata was to manufacture coating machines for sale to defendant Tokyo Electron, Ltd. ("TEL") and set certain pricing and other terms for such sales.  The MOU reiterated the parties' duty "[p]ursuant to" the DBVA to cooperate in seeking and protecting patent rights.  MOU ¶ 7 (App.40).  When the MOU took effect on January 21, 2004 (*id.* ¶ 6), the DBVA was still in effect.  (The DBVA expired on October 30, 2004, three years from its date of execution.  DBVA ¶ 9.1 (App.38).)  The MOU expressly disowned any attempt to "diminish or supersede" the terms of pre-existing agreements.  MOU ¶ 9 (App.45).  The MOU anticipated that it would be encompassed within 90 days in a new Definitive Business Venture Agreement that would "incorporate the basic concepts of the original" DBVA, modified to include the sales to TEL and otherwise as mutually agreed.  *Id.* ¶¶ 6, 8 (App.44).  That new agreement never materialized.  The MOU expired on December 31, 2004.  *Id.* ¶ 6.  Hirata and FAS did not renew the DBVA and MOU after they expired.

---

[3] The corresponding language in the Additional NDA differs slightly, but immaterially, from that in the other agreements, requiring arbitration of "any question, dispute or difference among the Parties arising out of or in connection with this Agreement . . . ."  Additional NDA ¶ 8 (App.28).

### III. ARGUMENT

A.    **The Federal Arbitration Act Requires Arbitration of This Dispute**

The Federal Arbitration Act (the "FAA") applies to any "contract evidencing a transaction involving commerce" and provides that any arbitration agreement within its scope "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). A court must therefore command arbitration if (1) a valid agreement to arbitrate exists and (2) the agreement encompasses the dispute at issue. 9 U.S.C. § 4; *see Personal Sec. & Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (citing *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001)); *Hawk v. Spaghetti Warehouse Rests., Inc.*, No. 3:03-CV-0399-H, 2003 WL 21246138, at *1 (N.D. Tex. May 1, 2003).

In determining whether a dispute falls within the scope of an arbitration agreement, a court must construe the arbitration clause "generously," with "a healthy regard for the federal policy favoring arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (internal quotation marks omitted). Accordingly, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Techs., Inc. v. Communication Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("any doubts concerning the scope of arbitrable issues

should be resolved in favor of arbitration"); *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) ("We resolve doubts concerning the scope of coverage of an arbitration clause in a contract in favor of arbitration. . . . [Arbitration should be ordered] unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.") (internal quotation marks omitted); *Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985); *Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 338 (5th Cir. 1984); *Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979); *Life of Am. Ins. Co. v. Aetna Life Ins. Co.*, 744 F.2d 409, 412 (5th Cir. 1984); *Hawk*, 2003 WL 21246138, at *2.

The Fifth Circuit classifies arbitration clauses into two groups: "narrow" and "broad." A narrow agreement requires arbitration only for disputes "arising out of" the contract. A broad agreement requires arbitration of disputes that "relate to" or "are connected to" the contract. Broad arbitration clauses "embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998); *see also Prima Paint Corp., v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397-98 (1967) (labeling as "broad" a clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement . . .") (internal quotation marks omitted); *Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754-55 (5th Cir. 1993) (citing *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 n.10 (5th Cir. 1985)); *Hawk*, 2003 WL 21246138, at *2; *Buell Door Co. v. Architectural Sys., Inc.*, No. 3:02-CV-721-AH, 2002 WL 1968223, at *4-*5 (N.D. Tex. Aug. 20, 2002); *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 165 (5th Cir. 1998) (holding that, when an arbitration clause encompasses "[a]ny dispute . . .

5

arising out of or in connection with or relating to this Agreement," the parties "intend the clause to reach all aspects of the relationship") (internal quotation marks omitted).

### 1. There Are At Least Four Arbitration Agreements Between FAS and Hirata

As noted above, each of the principal agreements between Hirata and FAS contains a broad arbitration clause.[4] Those clauses provide for arbitration of "any dispute between the parties arising from the execution of or in connection with" the agreements.[5] The "in connection with" language of the arbitration clauses places each squarely into the "broad" category. *Pennzoil*, 139 F.3d at 1067 ("The Joint Operating Agreement uses not only the phrase 'arising out of,' but also 'in connection with or relating to.' This resolves any doubt that this is a 'broad' clause."). The arbitration agreements must therefore be understood to "reach all aspects of the relationship" between the parties and to govern this action in its entirety. *Nauru Phosphate Royalties*, 138 F.3d at 164 (internal quotation marks omitted); *Pennzoil*, 139 F.3d at 1067 ("Broad arbitration clauses . . . are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute.").

---

[4] *See supra pp.* 2-3 and note 3. *See also* BVA ¶ 16 (App.23) ("In the event of any dispute between the parties arising from the execution of or in connection with this AGREEMENT . . . the dispute shall be resolved according to the rules of the International Arbitration Association. Any arbitration action taken by . . . FAS against HIRATA shall be conducted in Tokyo, Japan."); NDA ¶ 8 (App.5) (same); DBVA ¶ 15 (App.41) (same, except dispute to be resolved according to the "rules of the International Chamber of Commerce"); Additional NDA ¶ 8 (App.28) (same, with "Rules of the International Court of Arbitration, International Chamber of Commerce" and with clause governing "any question, dispute or difference among the Parties arising out of or in connection with this Agreement").

[5] As mentioned in footnotes 3 and 4 above, the corresponding language in the Additional NDA differs slightly, but immaterially, from that in the other agreements, requiring arbitration of "any question, dispute or difference among the Parties arising out of or in connection with this Agreement . . . ." Additional NDA ¶ 8 (App.28).

### 2. The Arbitration Agreements Encompass Each of FAS's Claims Against Hirata

Each of FAS's claims arises directly from or substantially relates to its agreements with Hirata. FAS's claims for statutory theft and misappropriation of trade secrets specifically reference Hirata's alleged misuse of information it received "under its various agreements with FAS." Compl. ¶¶ 63, 67. Absent those agreements, Hirata would have no duty to refrain from disclosing or using FAS's putative trade secrets. FAS's fraud claim expressly relies upon Hirata's alleged intentional deviation from the parties' agreements and its "breach of [its] contractual obligations to FAS." *Id.* ¶ 71. The claims for conversion and unjust enrichment are likewise based upon Hirata's alleged misuse of information that it obtained pursuant to the agreements. *Id.* ¶¶ 76-80. The conspiracy count alleges that Hirata and co-defendant TEL agreed to misuse the information that they acquired under the agreements with FAS. *Id.* ¶¶ 81-82. FAS's claim for tortious interference likewise rests upon Hirata's and FAS's alleged mutual inducements to breach the agreements with FAS. *Id.* ¶ 86.

FAS's broad arbitration agreements with Hirata cover <u>all</u> disputes "arising from the execution of *or in connection with*" FAS's agreements with Hirata. Because each of the claims against Hirata in the Complaint plainly meets that description, 9 U.S.C. § 4 requires all those claims to be arbitrated. As discussed further below, this is true even for FAS's tort claims.

### 3. That Some of FAS's Claims Sound in Tort Is Immaterial

In determining whether a dispute is subject to an arbitration agreement, a court must look not to "the legal labels attached to the plaintiffs' claims" but rather to "the factual allegations underlying those claims." *Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000). In the Fifth Circuit a tort claim is arbitrable if the alleged tort is interwoven with the contract. This Court recently stated an alternative formulation of the test: "Under federal law, a claim sounding in tort

does not prevent arbitration, so long as the underlying contract embraces the disputed matter." *Third Party Advantage Adm'rs, Inc., v. J.P. Farley Corp.*, No. 3:06-CV-0534-G, 2006 WL 3445216, at *6 (N.D. Tex. Nov. 27, 2006).

FAS's claims are inextricably tied to its agreements with Hirata containing the arbitration clauses. The parties' relationship is defined by those agreements, and each count in the Complaint is grounded in Hirata's supposed misappropriation and misuse of information obtained in accordance with those agreements. Without the contractual duties that Hirata allegedly violated, FAS would have no claim and no basis for recovery.

The Fifth Circuit confronted similar circumstances in *Neal*. The plaintiff there sought to avoid an arbitration clause in a franchise agreement by suing in tort for the franchisor's alleged "fraud, deception, bad practice, breach of contract, and breach of good faith." 918 F.2d at 38. The Fifth Circuit reversed the trial court's denial of arbitration, holding: "The keystone of the deal between the parties was the transfer of franchise rights" under the franchise contract, which had a broad arbitration clause. *Id*. Therefore, all disputes arising under the agreements were to be arbitrated – and this specifically included the allegedly fraudulent inducement of the agreement by misrepresentations about the profitability of the prospective franchises. *See id*. This Court and other federal courts in Texas have reached the same result in many similar cases. *See, e.g.*, *Third Party Advantage*, 2006 WL 3445216, at *3 (requiring arbitration of claims for conversion, tortious interference with a business relationship, and violation of the Texas Theft Liability Act); *FCI USA v. Tyco Elecs. Corp.*, No. 2:06-CV-128, 2006 WL 2037557, at *2 (E.D. Tex. July 18, 2006) (holding claim for misappropriation of trade secrets to be within scope of arbitration clause because agreement covered use of confidential information); *VDV Media Corp. v. Relm Wireless, Inc.*, No. 3:05-CV-1877-H, 2006 WL 462436, at *2 (N.D. Tex. Feb. 27, 2006)

(holding arbitrable claims for tortious interference and misappropriation of trade secrets); *Gray v. Sage Telecom*, Inc., 410 F. Supp. 2d 507, 510-11 (N.D. Tex. 2006) (same for tortious interference, breach of fiduciary duty, civil conspiracy, intentional infliction of emotional distress); *Osteomed, L.P. v. Koby Indus., L.P.*, No. 3:06-CV-1045-K, 2006 WL 3392184, at *2 (N.D. Tex. Nov. 20, 2006) (same for civil conversion, fraudulent inducement, fraud, and civil conspiracy); *Sharju Ltd. P'ship v. Choice Hotels Int'l, Inc.*, No. 3:01-CV-2605-X, 2002 WL 107171, at *2 (N.D. Tex. Jan. 22, 2002) (same for tortious interference based on the Franchise Agreement, because the claim "is rooted in certain express terms of the Franchise Agreement. The performance or non-performance of these specific contractual duties created by the Franchise Agreement forms a condition precedent to the maintenance of plaintiff's tort claim. The manner in which these contractual provisions are applied and interpreted will most likely determine the outcome of plaintiff's claim."); *cf. Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 221-22 (5th Cir. 1998) (holding that broad forum-selection clause in contract between seamen and shipping company applied to tort as well as contract causes of action).

Each of FAS's claims is inextricably intertwined with the parties' agreements and depends on the existence of those agreements and Hirata's alleged violations thereof. Thus, that FAS pleaded in tort does not exempt its claims from the arbitration that those agreements mandate. Because valid arbitration agreements encompass each of Plaintiff's claims, this Court should compel FAS to arbitrate its claims in Japan in accordance with the terms of those agreements, pursuant to the FAA. *See* 9 U.S.C. § 4.

**B.     Dismissal, Rather Than a Stay, Is Appropriate**

When an action involves some arbitrable and some non-arbitrable issues, a court must stay the action pending the outcome of arbitration on the arbitrable issues. 9 U.S.C. § 3. When

all the issues in an action are arbitrable, however, the appropriate course of action is to dismiss the complaint. *See, e.g.*, *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Courts in the Fifth Circuit and elsewhere have routinely dismissed complaints in such circumstances pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(3) and the FAA.[6] In *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 679 (5th Cir. 1999), for example, the Fifth Circuit upheld dismissal of an arbitrable action even where the arbitration statute of limitations had run, leaving plaintiff without a remedy. *See also Alford*, 975 F.2d at 1164; *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *Adevereaux v. Sports & Fitness Clubs of Am., Inc.*, No. 3-030CV-2824-L, 2004 WL 414896, at *3 (N.D. Tex. Feb. 17, 2004); *Bloxom v. Landmark Publ'g Corp.*, 184 F. Supp.2d 578, 585 (E.D. Tex. 2002); *Dancu v. Coopers & Lybrand*, 778 F. Supp. 832, 835 (E.D. Pa. 1991), *aff'd*, 972 F.2d 1330 (3d Cir. 1992); *Hoffman v. Fidelity & Deposit Co. of Maryland*, 734 F. Supp. 192, 195 (D.N.J. 1990); *Sea-Land Ser., Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D.P.R. 1986).

As shown above, all of FAS's claims fall within the compass of the arbitration clauses. The only permissible role for a court is to review the arbitration award at the conclusion of the proceedings on the narrow grounds specified in 9 U.S.C. § 10. *See Alford*, 975 F.2d at 1164. In these circumstances, the Complaint, like the complaints in the cases just cited, should be dismissed rather than stayed.

---

[6] The Fifth Circuit has observed that there is a split of authority concerning whether Rule 12(b)(1) or 12(b)(3) provides the proper basis for seeking dismissal based on a forum selection or arbitration clause. *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir.) (citing 5B Wright & Miller, *Federal Practice & Procedure* § 1352 (3d ed. 2004)), *cert. denied*, 126 S. Ct. 365 (2005). While accepting a 12(b)(3) motion, the court declined to rule on whether a 12(b)(1) motion would also be appropriate. *Id.*

## IV. CONCLUSION

For the foregoing reasons, this Court should issue an order compelling FAS to arbitrate its claims in accordance with the arbitration clauses in the agreements and dismissing the Complaint with prejudice.

March 30, 2007                                             Respectfully submitted,


                                                   */s/ David R. McAtee II*
                                                   David R. McAtee II
                                                   State Bar No. 00791213
                                                   Elisabeth Rain
                                                   State Bar No. 24051222
                                                   HAYNES AND BOONE, LLP
                                                   901 Main Street, Suite 3100
                                                   Dallas, Texas 75202-3789
                                                   Telephone: (214) 651-5000
                                                   Telecopy:  (214) 651-5940

                                                   **ATTORNEYS FOR DEFENDANT**
                                                   **HIRATA CORPORATION**

## CERTIFICATE OF CONFERENCE

On March 29, 2007, I conferred with FAS attorney Jeff J. Horn, Jr. regarding the relief requested in this Motion to Compel Arbitration and Dismiss Complaint. Mr. Horn stated that FAS opposes the Motion.

> _/s/ David R. McAtee II_
> David R. McAtee II
> Attorney for Defendant Hirata Corporation

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 30, 2007, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Jeff J. Horn, Jr.
OHASHI & HORN
Republic Center
325 N St Paul St., Suite 4400
Dallas, TX 75201

Alfonso Garcia Chan
Cody Aaron Kachel
Jeffrey R. Bragalone
Joseph F. DePumpo
Michael W. Shore
SHORE CHAN BRAGALONE
325 North St Paul St.
44th Floor
Dallas, TX 75201

Daniel T. Conrad
JONES DAY
PO Box 660623
2727 N. Harwood St
Dallas, TX 75266-0623

                /s/ M. Elisabeth Rain